**SO ORDERED.**

**SIGNED October 5, 2015.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**IN RE: ROBERT JOSEPH HEBERT, JR.**                    **CASE NO: 14-30559**
**MEGAN LE'ANN LAMPEREZ HEBERT**

**REASONS FOR ORDER ON MOTION TO**
**DISALLOW ATTORNEY FEES AND APPLICATIONS TO EMPLOY**

The following matters are before the court: (i) the Debtors' Motion to Disallow Attorney Fees ("Motion to Disallow") (Doc. 27) and the Objection and Opposition to that Motion filed by Spencer H. Calahan, L.L.C. ("Calahan") (Doc 34); (ii) the Application to Employ Spencer Calahan Injury Lawyers (Doc. 40); and (iii) the Application to Approve Compromise and to Employ and the Application to Employ Mr. Gautier (Doc. 38). For the reasons which follow, the Motion to Disallow is granted, and both Applications to Employ Counsel are denied.

**I. Jurisdiction of the Court**

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1334 and the reference from the District Court pursuant to Uniform Local District Court Rule 83.4.11, which is incorporated into Local Bankruptcy Rule 9029.3. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and 11 U.S.C. §§329-330. The following Findings of Fact and Conclusions of Law are made pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7052.

## II. Factual and Procedural Background

Joint Debtor, Megan Le'Ann Lamperez Hebert ("Hebert"), allegedly suffered an injury while at Blue Bayou Water Park in Baton Rouge, Louisiana on or around July 3, 2011. The Debtor engaged Mr. David Groner and David Groner, PLC ("Groner"), on a contingency fee basis, to represent her in pursuing a personal injury claim against Blue Bayou. (Opp., Doc. 34, Ex. 1.)

A letter written by Groner on September 1, 2011, shows an arrangement between Groner and Calhan, pertaining to the representation of Hebert. Calahan was to handle the liability portion of Hebert's claim and Groner was to handle "damages and client relations." (Opp., Doc. 34, ¶1.) Groner and Calahan apparently agreed to share the contingency fee, which may be earned in the representation of Hebert, although the specifics of their agreement were not disclosed to the Court. On November 29, 2011, Groner and Calahan jointly filed a Petition for Damages on behalf of Hebert in State District Court in East Baton Rouge Parish, Louisiana (the "Personal Injury Action").[1] In June 2012, Debtor engaged Gauthier & Amedee, APLC and Andre' P. Gauthier of that firm (collectively, "Gauthier") to represent her in the Personal Injury Action and terminated Calahan. (Opp., ¶3.)

On March 27, 2014, the Debtors commenced this Chapter 13 proceeding. The Debtors' Schedules disclosed the Joint Debtor's personal injury claim against Blue Bayou Water Park. (Doc. 1, Schedule B.) Contemporaneously with filing of the Petition, the Debtors filed their proposed Chapter 13 Plan (Doc. 7.), which pledged to the repayment of creditors one-half of any net recovery the Debtors may obtain on the Personal Injury Action. There were no objections to the Plan, and it was confirmed by Order of this Court on June 25, 2014. (Doc. 18.)

The Personal Injury Action was settled in late 2014. By Order dated April 23, 2015 Andre' P. Gauthier was authorized as Special Counsel for Hebert, and the Court approved the settlement negotiated by Mr. Gauthier in the amount of $67,102.14 ("Settlement Amount"). (Doc. 22.) This Order also approved the disbursement of the Settlement Amount as follows:

a) $19,518.00 to Andre' P. Gauthier as reimbursement for medical expenses;
b) Attorney fees for representation in the case are waived;
c) $32,070.12 for costs advanced, broken down as follows:
   1. $21,901.18 to Gauthier & Amedee
   2. $9,416.19 to David Groner

---

[1] Opp., ¶2; a copy of the Petition commencing the Personal Injury Action is attached to the Opposition as Exhibit 2. The action is captioned: *Megan Lamperez v. Indian Harbor Insurance Company, Blue Bayou Water Park and Proslide Technology, Inc.*, Docket No. 607,234, 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

3. $752.75 to Spencer Calahan
   d) $7,757.01 to Standing Chapter 13 Trustee for distribution to Creditors;
   e) $7,757.01 to the Debtor, Megan Hebert.

The Order also recognized Groner's and Gauthier's agreement to waive all attorneys' fees which otherwise would have been due to them out of the Settlement Amount as a contingency fee.

On May 5, 2015, counsel for the Debtor moved to vacate the Order on the grounds that "counsel was notified that D. Brandt Schmolke of Spencer Calahan Injury Lawyers was also asserting a right to a contingency fee for work allegedly performed in the debtor's personal injury case." (Doc. 25.) The "notification" referred to by Debtor was apparently a reference to a Petition for Intervention that Calahan had instituted against the Debtor on April 23, 2015 in the Personal Injury Action pending in state court.

Debtors also filed the Motion to Disallow, requesting that the Court not award any fees to Calahan, citing as grounds the fact that Calahan had not timely appeared before this Court to assert "his alleged lien for attorney's fees." (Doc. 27.) Calahan filed an Opposition to the Motion to Disallow, claiming to be entitled to a contingency fee equal to 15% of the original 40% contingency fee Groner was entitled to recover under his contract with Debtor, which would be $3,900. Alternatively, Calahan claims to be entitled to recover from Hebert based on *quantum meruit* at $195 per hour. (Doc. 34.)

The hearing on both the Motion to Vacate the Initial Order and the Motion to Disallow was held on July 10, 2015. Following the hearing, the Court granted the Motion to Vacate. (Doc. 35.) The Motion to Disallow was dismissed without prejudice to the parties re-noticing a hearing on that Motion. On July 13, 2015, a Notice was filed re-setting the hearing on the Motion to Disallow.

The hearing on the re-noticed Motion to Disallow was held September 10, 2015. Appearing at the hearing were Joint Debtor, Mrs. Hebert; her bankruptcy counsel, Jeff Smith; Andre P. Gauthier, counsel for Mrs. Hebert in the Personal Injury Action; D. Brandt Schmolke, counsel for Calahan; and Eugene Hastings, the Standing Chapter 13 Trustee. Mrs. Hebert, was sworn and testified that she had never met, spoken to, or received correspondence from Calahan or Mr. Schmolke concerning their representation of her in the Personal Injury Action. She stated that she never engaged Calahan to represent her in Personal Injury Action, and had no knowledge of Calahan's or Mr. Schmolke's involvement in her state court cause of action. Calahan's counsel, Mr. Schmolke, confirmed during the hearing that Calahan did not have a contract with Hebert, and that its only arrangement pertaining to the representation of Hebert was established by the letter from Groner.

3

### III. Law and Analysis

**A.     Authority of the Court.**

"Special counsel who represent a Chapter 13 debtor 'in connection with' a case under Title 11 are regulated by §329 of the Bankruptcy Code; they must 'file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation.'" *In re Jones*, 505 B.R. 229, 233 (Bankr.E.D.Wisc. 2014), *citing* 11 U.S.C §329(a). Special counsel compensation is also subject to approval under §330(a)(4)(B) of the Bankruptcy Code, which provides in part that "in a . . . chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor." "The phrase, 'in connection with the bankruptcy case' must be read liberally to include attorney work for a debtor that could have a conceivable effect on the Chapter 13 case while a debtor prosecutes a Chapter 13 case." *In re Powell*, 314 B.R. 567, 571 (Bankr.N.D.Tex. 2004); *In re Scott*, 531 B.R. 640 (Bankr.N.D.Miss. 2015). The *Jones* Court recognized that §§ 329 and 330 of the Bankruptcy Code are applicable to counsel engaged by a debtor to pursue a claim belonging to the debtor's estate:

> While most obviously applicable to bankruptcy counsel's compensation, these provisions apply equally to counsel employed by a debtor to provide legal services "in connection with" her bankruptcy case, such as pursuing a claim that is property of the estate. Cf. *In re Campbell* 259 B.R. 615, 627–28 (Bankr. N.D. Ohio 2001). *See also In re Powell*, 314 B.R. 567, 570–71 (Bankr.N.D.Tex.2004). Specifically, counsel who represent the debtor in prosecuting a claim that is property of the estate or a claim committed to fund a chapter 13 plan represent the debtor "in connection with" the bankruptcy case.

*In re Jones*, 505 B.R. at 233.

Accordingly, to the extent a debtor employs an attorney to pursue a cause of action which belongs to the Chapter 13 estate, the proceeds of which are pledged to fund part of the Chapter 13 plan, the Court has the authority under §329 and §330 of the Bankruptcy Code to approve any and all fees paid, or to be paid to the attorney or attorneys who represent the debtor in such cause of action.

The Court finds that the Personal Injury Action involves a claim that is property of the Debtors' estate. Fifty percent of the net proceeds derived by the Debtors from the Personal Injury Action, whether by settlement or judgment, was pledged to repayment of the Debtors' creditors under the confirmed Chapter 13 Plan.  Therefore, the Court has the authority under §329 and §330 of the Bankruptcy Code to consider and approve the application by Joint Debtor's attorneys which seeks, with regards to the Personal Injury Action, the approval of (i) their employment in representing the Joint Debtor, (ii) the Settlement Amount and (iii) the allocation of the Settlement Amount, including the allocation of such

proceeds to the attorneys as compensation for their services in representing the Joint Debtor in connection with the Personal Injury Action. For the same reasons, the Court has the authority to consider the Debtors' Motion to Disallow.

**B.     Calahan's Right to a Fee for representing the Joint Debtor in the Personal Injury Action**

    **1.     Calahan's claim to a Contingency Fee**

A lawyer's contingency fee contract with a client must be in writing. Rule 1.5(c) of Article 16 of the Louisiana Rules of Professional Conduct provides in pertinent part that "a contingent fee agreement shall be in writing . . . [and] state the method by which the fee is to be determined. . . ."[2] The Rules of Professional Conduct "are recognized as having the force and effect of substantive law." *See Dereyna v. Pennzoil Exploration*, 880 So.2d 124, 128 (La. App. 3rd Cir. 8/4/2004); *writ den.* 888 So.2d 197 (La. 11/19/2004).

Further, La. R.S. 37:218 authorizes an attorney to secure his interest in a client's claim. This statute provides "that an attorney may preserve his interest in his client's case be entering into 'a written contract signed by his client.'" *Dereyna,* 880 So.2d at 128. This statute also allows the recordation of the written engagement agreement in the records of the parish of the client's domicile, and any suit filed by the lawyer in accordance with such written contract cannot be disposed of without the lawyer's written consent. As noted in *Dereyna*, "the lynchpin of this statutory method of protecting a lawyer's interest in his fee is that the contract between the lawyer and the client be in writing." *Id.*

Mrs. Hebert testified that she did not have an agreement, written or otherwise, with Calahan pertaining to Calahan's representation of her in the Personal Injury Action. She was adamant that she had never met anyone from Calahan's firm. Mr. Groner confirmed during the hearing that Calahan did not have a written contract with Hebert. Since there is not a written agreement between Calahan and Hebert, Calahan is not entitled to share in a contingency fee based on the Settlement Amount of the Personal Injury Action.

However, Calahan had an arrangement with Groner pertaining to the representation of Hebert. Filed with Calahan's Opposition to the Motion to Disallow was a letter from Mr. David Groner to Mr. Spencer Calahan, of the Law Offices of Spencer H. Calahan, L.L.C., which sets forth general terms of a joint representation of Mrs. Hebert. The letter discusses the various aspects of the case which will be handled by each firm. The letter does not set forth an agreement on the sharing of fees, but indicates that a separate agreement would later be obtained from Hebert concerning the joint representation. Mr. Groner stated in this letter: "I have a contract of representation signed by my client and will have her sign a new

---

[2] The United States District Court for the Western District of Louisiana has adopted the Louisiana Rules of Professional Conduct pursuant to Local Rule 83.2.4.

contract acknowledging our agreement to split attorney fees and costs in this case." (Doc. 34, Ex. 1.) Apparently, a "new contract" was never obtained from Mrs. Hebert, as no such contract was submitted to the Court. Nonetheless, Calahan contends that Groner's letter provides Calahan with a right to share in the contingency fee that was payable to Groner under Groner's contract with Hebert.

Rule 1.5(e) of Article 16 of the Louisiana Rules of Professional Conduct addresses the sharing of contingency fees by lawyers who are not in the same firm. This Rule provides in part that "a division of fee between lawyers who are not in the same firm may be made only if: (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive; (2) the total fee is reasonable; and (3) each lawyer renders meaningful legal services for the client in the matter." *See also Matter of Wright v. Thomas*, 138 Fed.Appx. 690, 696 (5th Cir. 2005) (Under Texas Disciplinary Rules of Professional Conduct, there mere authorization to associate other counsel in a contingency fee contract, without written permission of the client to the specific fee sharing arrangement, is not enforceable.). Based on Hebert's testimony, and the representations by Mr. Schmolke on behalf of Calahan, there is no contract between Hebert, on the one hand, and Groner and Calahan, on the other, pertaining to the joint representation of Hebert and the sharing of attorney fees between the two law firms.

Given Calahan's lack of compliance with Louisiana law with regards to contingency fee contracts, Calahan is not entitled to a contingency fee based on the Settlement Amount.

   2.   **Calahan's *Quantum Meruit* Claim**

Alternatively, Calahan seeks to recover a fee based on the doctrine of *quantum meruit*. While Calahan couches this alternative argument as one based on *quantum meruit*, the Court will be guided by the factors set forth in §330 of the Bankruptcy Code in determining whether Calahan may be entitled to payment of a fee for its work on the Personal Injury Action in absence of a formal contract with Hebert. The factors to be considered by the court include the time spent by Calahan in providing services to Hebert and the rates charged for those services.

Based on the record in this matter, it appears that Calahan may have participated in the drafting of the original suit, as Calahan signed the Petition for Damages filed in the Personal Injury Action. However, Groner also executed the Petition, indicating his participation in preparing the 11 paragraph Petition for Damages. Calahan also claims to have spent time having the suit served under the Hague Convention, as one of the defendants allegedly was located in Canada. Finally, Calahan claims to have prepared written discovery.

The problem, however, is that Calahan did not submit any evidence indicating the time attorneys

6

with the Calahan firm spent preparing the Petition for Damages or any other pleading or document, and the rate normally charged by those attorneys. During the hearing on the Motion to Disallow, Mr. Schmolke was asked whether Calahan had any evidence to support its claim to attorney's fees based on *quantum meruit*. His response was that Calahan was not submitting any such evidence, on the apparent grounds that the fees, when calculated based on actual hours worked, would be far greater than the $3,900 fee Calahan was requesting on a contingency fee basis.

Since the record in this matter is devoid of evidence to support the hours that Calahan attorneys actually worked on the Personal Injury Action, and the rate charged for those services, Calahan's request for a fee based on *quantum meruit* is denied.

**Conclusion**

For the foregoing reasons, Debtors' Motion to Disallow Attorney's Fee (Doc. 27) is Granted; the Application to Employ Spencer Calahan Injury Lawyers (Doc. 40) is Denied; the Order Granting Motion to Approve Settlement, Authorize Employment of Special Counsel and Attorney Fees (Doc. 22) is Reinstated; and the Application to Approve Compromise and to Employ and the Application to Employ Mr. Gautier (Doc. 38) is Denied as Moot. A separate and conforming Order will be entered.

# # #